So Ordered.

Dated: March 6, 2024



G. Michael Halfenger  
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Vickie L. Goldapske and  
Ronald A. Goldapske,

Case No. 19-23754-gmh  
Chapter 13

Debtors.

**OPINION AND ORDER ON
DEBTORS' MOTION TO MODIFY CONFIRMED PLAN**

The debtors have filed a motion to modify the confirmed plan that, in relevant part, purports to "confirm that the debtor[s] paid the filing fee when filing the petition and the first payment is due under the plan thirty (30) days after the date of filing the petition." ECF No. 83, at 2. The trustee disputes this interpretation of the plan and objects that the Bankruptcy Code does not permit such a modification of a confirmed chapter 13 plan, at least as the trustee reads the request. For the reasons that follow, the court agrees with the trustee, though with the caveat that the proposed modification may be permissible if construed as a reduction of the period over which the plan provides for payments, an issue on which the court will permit further submissions.

I

The confirmed plan in this case is best construed to provide for payments by the debtors to the trustee over a 60-month period starting at confirmation. In relevant part the confirmed plan states that the debtors will make payments to the trustee of $1,355 each month for 60 months, but it does not say when the 60-month period begins. ECF No. 12, at 1. Under the circumstances, the debtors' plan was confirmable only because, "as of the effective date of the plan", it "provide[d] that all of the[ir] . . . projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan w[ould] be applied to make payments to unsecured creditors under the plan." 11 U.S.C. §1325(b)(1) & (b)(1)(B).[1] The "effective date" of a plan "is the date on which the plan is confirmed and becomes binding". *Hamilton v. Lanning*, 560 U.S. 505, 518 (2010) (citing 11 U.S.C. §1327(a)). Consequently, the first payment "under the plan"—which is to say, the first payment that the *binding* terms of a chapter 13 plan require the debtor to make—is the first payment due after confirmation. The applicable commitment period here is "not less than 5 years". See §1325(b)(4)(A)(ii); see also 11 U.S.C. §§101(10A) & 1322(d)(1).[2] Reading these provisions together, as the Supreme Court has interpreted them and in the absence of any express

---

1. Section 1325(b)(1)(B) applies "[i]f the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan". §1325(b)(1). In this case, the trustee objected to confirmation, thus requiring the debtors to show that §1325(b)(1)'s requirements for plan confirmation had been satisfied.

2. Section 1325(b)(4)(A)(ii) applies here because the debtors' "current monthly income . . . , when multiplied by 12, is not less than . . . the highest median family income of the applicable State for a family of" 3. §1325(b)(4)(A)(ii)(B); see ECF No. 35, at 2–3. Section 101(10A) defines "current monthly income" as "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during" a specified 6-month period *preceding* the filing of the petition. §101(10A)(1). As this period is static through a chapter 13 case, a debtor's "current monthly income" does not change and is, therefore, referred to here in the present tense and as a fixed amount. Although §1325(b)(4)(A)(ii) describes the "applicable commitment period" as "not less than 5 years", §1322(d)(1) states that, when a chapter 13 debtor's "current monthly income" is equal to or exceeds the applicable median family income, "the plan may not provide for payments over a period that is longer than 5 years." This effectively caps the length of the applicable commitment period for a chapter 13 plan at 5 years.

language in the plan to the contrary, the 5-year applicable commitment period and the 60-month payment period under the confirmed plan in this case both ran from confirmation, i.e., the plan's effective date.

The debtors' main, statutory argument for a different reading of the confirmed plan is as follows: A chapter 13 plan cannot "provide for payments over a period that is longer than 5 years." §1322(d)(1). Chapter 13 debtors are required to "commence making payments not later than 30 days after the date of the filing of the plan . . . in the amount . . . proposed by the plan to the trustee". *Id.* §1326(a)(1). And a plan's provisions are binding on all parties upon confirmation. §1327(a).[3] In this case, the plan provides for payments by the debtors to the trustee over 60 months (i.e., 5 years), the debtors started making payments 30 days after the petition was filed (as required), the debtors and the trustee are bound by those terms (because the plan was confirmed), and the debtors have complied with those terms by "faithfully ma[king] every single payment required by their Confirmed Plan." ECF No. 100, at 7.

This argument fails to recognize that payments "proposed by the [unconfirmed] plan", for purposes of §1326(a)(1), are not necessarily payments "provide[d] for" by the plan, for purposes of §1322(d)(1), or "payment[s] . . . under the plan", for purposes of §1325(b)(1)(B). Any preconfirmation payments that a chapter 13 debtor is required to make are payments required by statute, i.e., §1326(a)(1), not payments required by the plan. The plan imposes duties on the debtor only when it is confirmed. §1327(a). So, the *plan* imposes no duty to make preconfirmation payments, at least absent language in the plan (or the order confirming it) providing otherwise (e.g., specifying an effective

---

3. Although the debtors assert that all parties are bound by "[t]he provisions of a confirmed plan", §1327(a) provides only that "the debtor and each creditor" are so bound. But cf. *In re Wulff*, 598 B.R. 459, 467 n.4 (Bankr. E.D. Wis. 2019) ("In describing the effect of confirmation, section 1227 curiously does not list the chapter 12 trustee among those who are specifically bound by a confirmed plan. That omission does not, however, alter the underlying law of *res judicata* . . . ."). This opinion need not, so does not, resolve whether the trustee is similarly bound by a confirmed plan's terms.

date of the plan that precedes confirmation). Some courts have looked to legislative history to explain this.[4] But whatever the reason for it, this is chapter 13 as Congress has chosen to enact it, and this court and the parties are bound by its provisions.

The debtors also argue for a different reading of the confirmed plan based on considerations such as "the common practice in this district" before "the adoption of the Current Model Plan" and interpretations of the relevant Code provisions by the Bankruptcy Court for the Western District of Wisconsin. ECF No. 100, at 8–11. If a plan's terms are ambiguous, then factors like these—including but not limited to the parties' understanding of the plan's terms when it was confirmed—may be relevant to construing them, though that is far from clear given the lack of clarity in the Seventh Circuit's relevant caselaw.[5] Here, though, the plan and the applicable Code provisions,

---

4. For example, the Tenth Circuit Court of Appeals, quoting the Bankruptcy Court for the District of New Mexico—itself quoting a portion of a Senate Report discussing relevant language in the Omnibus Bankruptcy Improvements Act of 1983, S. 445, 98th Cong., an unenacted precursor bill to the Bankruptcy Amendments and Federal Judgeship Act of 1983, H.R. 5174, 98th Cong., §318 of which amended §1326 to first require a chapter 13 debtor to "commence making . . . payments" before confirmation as "proposed by [the] plan", albeit "within 30 days after the plan is filed", as opposed to 30 days after the petition is filed, as the statute now provides—recently wrote:

> In requiring . . . pre-confirmation payments, Congress reasoned that "when the payments do not begin promptly, the debtor becomes accustomed to living on money that will not be available once the plan becomes operational," and that "the period between the filing of a plan and confirmation provides a good test of whether the debtor will be able to carry out the plan, or whether some modification is necessary."

*In re Doll*, 57 F.4th 1129, 1138 (10th Cir. 2023) (quoting *In re Acevedo*, 497 B.R. 112, 121 n.22 (Bankr. D.N.M. 2013)), cert. denied sub nom. *Goodman v. Doll*, No. 23-218, 2024 WL 674703 (U.S. Feb. 20, 2024); see S. Rep. No. 98-65, at 15–16 (1983).

5. As this court has observed, "[t]he law governing the interpretation of a confirmed chapter 13 plan is surprisingly unsettled." *In re Terrell*, 637 B.R. 129, 135 (Bankr. E.D. Wis. 2021). The Seventh Circuit has suggested "that something analogous to the four-corners principle that applies to federal consent decrees ought to govern interpretation of plans confirmed by the bankruptcy court." *In re Harvey*, 213 F.3d 318, 321–22 (7th Cir. 2000). But the Seventh Circuit has also said, "Principles of contract law apply to interpreting a plan of reorganization: 'A confirmed plan of reorganization is in effect a contract between the parties and the terms of the plan describe their rights and obligations.'" *FCC v. Airadigm Commc'ns, Inc. (In re Airadigm Commc'ns, Inc.)*, 616 F.3d 642, 664 (7th Cir. 2010) (quoting *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 755 (7th Cir. 2002)). The Seventh Circuit has also

read in accordance with governing precedent, adequately support the court's reading of the plan's terms, obviating the need for such secondary interpretative aids.

II

Given the above construction of the confirmed plan's terms, the relevant language in the debtors' motion to modify the confirmed plan cannot be understood as "simply clarif[ying] the terms of the Confirmed Plan," but must instead be read as what it is: a request to change the plan's provisions. See ECF No. 100, at 11. With respect to whether the confirmed plan can be modified as the debtors propose, the trustee has the better argument—indeed, the debtors offer *no* argument on this issue, relying entirely on their proffered construction of the confirmed plan. The trustee argues that a confirmed chapter 13 plan cannot be modified merely to change when the applicable commitment period began—or, put differently, to change only the effective date of the plan for purposes of §1325(b)(1)(B). The court agrees.

Modification of a confirmed chapter 13 plan is governed by 11 U.S.C. §1329, subsection (a) of which enumerates the specific, limited ways in which, "after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor". For example, such a plan may be modified "to . . . increase or reduce the amount of payments on claims of a particular class provided for by the plan" or "extend or reduce the time for such payments". §1329(a), (a)(1) & (a)(2).

The debtors' motion to modify the confirmed plan does not, in relevant part, appear to seek a modification of any of the permissible types listed in §1329(a). Instead, the simplest interpretation of the debtors' request, based on its plain language, seems to be that they wish to merely shift the period for payments under the plan backward in

---

described "[a] bankruptcy court's interpretation of a plan it confirmed . . . as an interpretation of its own order". *Airadigm Commc'ns, Inc. v. FCC (In re Airadigm Commc'ns, Inc.)*, 547 F.3d 763, 768 (7th Cir. 2008) (citing *In re Weber*, 25 F.3d 413, 416 (7th Cir. 1994)).

time such that it started earlier (but is no shorter or longer).

And yet, the relevant language in the debtors' motion can instead be understood to seek a reduction in the time for payments under the plan, which may be permissible under §1329(a)(2). If the motion is read to seek a modification that leaves the plan's effective date (and, therefore, the date on which the applicable commitment period commenced) as is, then it can be construed as a request to reduce the time for making payments by ending the period for payments under the plan 60 months after the debtors' first payment to the trustee under §1326(a)(1)—which they say they made 30 days after the petition was filed—rather than 60 months after confirmation.

Though the Code provisions applicable at confirmation may have required the debtors to make payments for five years after confirmation, §1329 does not apply those requirements to modifications of confirmed chapter 13 plans. See §1329(b)(1) (applying §1322(a) and (b), but not (d), and §1325(a), but not (b), to modifications of confirmed chapter 13 plans under §1329(a)). Thus, neither §1322(d) nor §1325(b) imposes an obstacle to modifying the confirmed chapter 13 plan to reduce the period during which the debtors must make payments.

Other limitations on modifying a confirmed chapter 13 plan may render the debtors' proposed modification impermissible, even if it is construed as a reduction of the period for payments under the plan, thereby requiring the court to "disapprove[]" it. See §1329(b)(2). For example, any modification of a confirmed chapter 13 plan must "be[] proposed in good faith". §1325(a)(3) (imposing this requirement at confirmation) & §1329(b)(1) (applying "the requirements of section 1325(a) . . . to any modification [of a confirmed chapter 13 plan] under [§1329](a)"); *Germeraad v. Powers*, 826 F.3d 962, 975 (7th Cir. 2016) (quoting §1329(b)(1)) ("[T]he good-faith standard is incorporated into § 1329 because it is one of the 'requirements of section 1325(a)' that applies to any modification."). But whether a debtor proposes a plan—or a plan modification—"in good faith is a question of fact" that must be resolved "based on the totality of

circumstances". *Marshall v. Blake*, 885 F.3d 1065, 1081 (7th Cir. 2018) (quoting *In re Smith*, 286 F.3d 461, 466 (7th Cir. 2002)); *In re Love*, 957 F.2d 1350, 1359 (7th Cir. 1992) (first citing *In re Schaitz*, 913 F.2d 452, 453 (7th Cir. 1990); and then citing *In re Smith*, 848 F.2d 813, 817 (7th Cir. 1988)). The record, as it is now, though, does not establish a lack of good faith by the debtors or require the court to disapprove the proposed modification on any other grounds.

Though the court cannot discern from the existing record any basis for disapproving the debtors' proposed modification, if construed as a request to reduce the period for payments under the plan, the parties' presentations are rooted in a different understanding of the debtors' request. The court will, therefore, afford the trustee more time to supplement her objection to the proposed modification, based on this opinion.

## III

Therefore, IT IS ORDERED that if the trustee desires to supplement her objection to the debtors' proposed plan modification, construed as a request under 11 U.S.C. §1329(a)(2) to reduce the time for payments under the plan, as described above, she must file a supplemental memorandum stating all additional grounds in support of her objection by no later than **21 days after the date on which this order is entered**.

IT IS FURTHER ORDERED that if the trustee timely files a supplemental memorandum as allowed by this order, the debtors must file a response to that memorandum by no later than **14 days after the date on which the trustee files the memorandum**.

IT IS FURTHER ORDERED that if the trustee does not file a supplemental memorandum as allowed by this order, then the court may construe the debtors' motion to modify the confirmed plan as described above and grant that request without further notice or a hearing.

#####